# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), a Michigan Corporation,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>KRISTINE LEE JACOBS, an individual; KRISTINE LEE JACOBS, as guardian of BRIAN C. WOOD, a minor; GINA NEFF, an individual; DUANE JACOBSEN, an individual; Does I to X and roe Corporations X to XX,<br><br>　　　　　　　　　　Defendants. | Case No. 2:13-cv-00557-APG-GWF<br><br>**AMENDED ORDER**<br><br>(Def.'s Motion for Summary Judgment – dkt. #33) |

　　　　A typographical error in my order dated February 14, 2014 (Dkt. #39) has been brought to my attention. Pursuant to Federal Rule of Civil Procedure 60(a), I may correct a clerical mistake on my own, without notice, whenever one is found in an order. I therefore enter this amended order correcting a typographical error on page 5, line 12 of my original order, which inadvertently omitted the word "not" between the words "does" and "apply." The amended order is set forth in full below. The correction is on page 5, line 17 of this amended order.

　　　　Before the Court is Defendant Kristine Lee Jacobs' Motion for Summary Judgment. (Dkt. #33.) For the reasons discussed below, the Motion is denied.

**I.　　BACKGROUND**

　　　　This is an impleader action concerning the proper disposition of a decedent's life insurance proceeds (the "Proceeds"). In 2000, Albert L. Wood, Jr. (the "Decedent") purchased a life insurance policy (the "Policy") from Plaintiff John Hancock Life Insurance Company (U.S.A.) ("Hancock"). The Decedent named Defendant Kristine Lee Jacobs ("Jacobs"), his wife

at that time, as the primary beneficiary under the policy. The Decedent also named as contingent, secondary beneficiaries Defendant Brandon Wood (erroneously identified as Brian C. Wood) (the Decedent's and Jacobs' minor son), Albert L. Wood, Sr. (the Decedent's father), Defendant Gina Neff (Jacob's mother), and Defendant Duane Jacobsen (Jacob's brother), with each secondary beneficiary to receive an allotted percentage of the proceeds.

In 2004, the Decedent and Jacobs divorced and disposed of property pursuant to a Settlement Agreement. The Settlement Agreement provided that "[Jacobs] shall be canceled from any and all insurance policies as a named beneficiary by [the Decedent]." (Dkt. #1, Ex. 3.) The Settlement Agreement was incorporated by reference in the Decree of Divorce. (Dkt. #1, Ex. 2.) However, the Decedent never canceled or changed Jacobs as the primary beneficiary under the Policy.

The Decedent died on December 15, 2012. Jacobs claimed entitlement to the Proceeds as the named beneficiary under the Policy, and requested payment. (Dkt. #1, Ex. 5.) Hancock however, filed this interpleader action, alleging that it had "been unable [to] confirm the proper and legal beneficiaries under the Policy, as well as the proper ratios of distributions of the Proceeds." (Dkt. #1 at 5.) Hancock expressed its concern that the terms of the Settlement Agreement as well as a recently passed Nevada statute[1] revoked any interest Jacobs may have had

---

[1] NRS 111.781(1), effective October 1, 2011, states:

> Except as otherwise provided by the express terms of a governing instrument, a court order or a contract relating to the division of the marital estate made between the divorced persons before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:
>
> (a) Revokes any revocable:
>
> (1) Disposition or appointment of property made by a divorced person to his or her former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced person's former spouse. . . .

in the Proceeds.  Hancock believed that all proceeds should be paid to Brian Woods, as the only remaining contingent beneficiary with a legal interest in the proceeds.[2]

In response, Jacobs filed a Counterclaim (dkt. # 9) and a Motion for Declaratory Judgment (dkt. #10) seeking the Court's determination that she is entitled to the Proceeds.  Jacobs asserted that she is the proper beneficiary because (i) she is the named primary beneficiary under the Policy; (ii) the legal effect of NRS 111.781 and the Settlement Agreement is uncertain; (iii) Brian supports her position; (iv) Neff has disclaimed any interest in the Proceeds; and (v) only [Jacobs] has made a claim to the Proceeds.  The Court denied Jacobs' motion, which it treated as one for summary judgment, because at that early stage of the proceedings questions of material fact existed.  Jacobs now brings this Motion for Summary Judgment, seeking the same determination as her previous motion.

## II.     DISCUSSION

### A.  Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Where reasonable minds could differ on the material facts at issue, however, summary judgment is not

---

[2] As cited above, NRS 111.781 also revokes any revocable disposition created in a governing instrument to a relative of the divorced person's former spouse. NRS 111.781(10)(e) defines "Relative of the divorced person's former spouse" as "a person who is related to the divorced person's former spouse by blood, adoption or affinity and who, after the divorce or annulment, is not related to the divorced person by blood, adoption or affinity." Consequently, the interests of Neff and Jacobsen would be eliminated. As Woods Sr. predeceased the Deceased, Brian Woods would be the sole remaining beneficiary.

3

appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### B. Analysis

Jacobs requests the Court's determination that she remains the proper beneficiary under the Policy and is entitled to the Proceeds. The question before the Court is whether NRS 111.781 or the Decree of Divorce divested Jacobs of her beneficiary interest. The Court concludes that NRS 111.781 does not apply, but that questions of material fact relating to Jacobs' and the Decedent's intent in the Settlement Agreement preclude summary judgment.

The general rule in Nevada was "that the rights of the beneficiary in an ordinary life insurance policy [were] not affected by subsequent divorce, particularly where no attempt [was] made to change the beneficiary after the divorce and the insured [kept] up payments on the policy." *Redd v. Brooke*, 604 P.2d 360, 361 (Nev. 1980). However, in 2011 the Nevada legislature reversed that general rule by passing NRS 111.781, which provides that, unless explicitly stated in the governing instrument, the effect of a divorce or annulment is the

1  revocation of any revocable disposition of property to a former spouse.  Although NRS 111.781 is
2  generally concerned with the non-probate transfer of assets upon an individual's death, the
3  operative act described by the statute is that of divorce or annulment.  Consequently, in order
4  dictate the effect of the Decedent's and Jacobs' divorce, which took place seven years before the
5  enactment of the statute, the statute would have to apply retroactively.

6  Nevada law includes a general presumption that a newly-enacted statute applies only
7  prospectively.  *Pub. Employees' Benefits Program v. Las Vegas Metro. Police Dept.*, 179 P.3d
8  542, 553 (Nev. 2008).  Courts will apply a statute retroactively only when "the Legislature clearly
9  manifests an intent to apply the statute retroactively, or 'it clearly, strongly, and imperatively
10  appears from the act itself' that the Legislature's intent cannot be implemented in any other
11  fashion." *Id.* (citing *In re Estate of Thomas*, 998 P.2d 560, 562 (Nev. 2000)).  Thus, "when the
12  Legislature intends retroactive application, it is capable of stating so clearly." *Id.*

13  Nothing in NRS 111.781 indicates that the Legislature intended for it to apply
14  retroactively.  Moreover, nothing indicates that the intent of the statute cannot be implemented
15  without retroactive application.  To the contrary, retroactive application would cause the undoing
16  of all previously settled dispositions of property under the former rule. *See, e.g.*, *Redd* 604 P.2d at
17  362.  Consequently, the Court finds that NRS 111.781 does not apply retroactively, and does not
18  divest Jacobs of her beneficiary interest.

19  Nonetheless, in addition to the general rule in Nevada existing before NRS 111.781, "[i]t
20  [was] also the rule that a wife [could] contract away her rights in the insurance on the husband's
21  life when a decree of divorce [was] obtained." *Id.* at 361.  In other words, where the explicit and
22  "unequivocal language" of the decree of divorce constituted a "waiver or renunciation" of one
23  spouse's right to take as the other's beneficiary, clearly indicating the spouses intended "to
24  deprive either spouse from the right to take under the insurance policy," the decree of divorce
25  divested the spouse's beneficiary status. *See id.*; *Ohran v. Sierra Health and Life Ins. Co., Inc.*,
26  895 P.2d 1321, 1322 (Nev. 1995).

27
28

5

Thus, the statement in the Settlement Agreement that "[Jacobs] shall be canceled from any and all insurance policies as a named beneficiary by [the Decedent]" could constitute a waiver or renunciation of Jacobs' rights to the Proceeds. If that is the case, then the Decree of Divorce divested Jacobs of her beneficiary interest, and the Proceeds should be awarded to Brandon Wood. Jacobs contends that the statement in the Settlement Agreement simply provided the Decedent with the discretion to change the beneficiary if he desired, but his lack of any affirmative action indicates his intent to maintain Jacobs as the beneficiary. However, the Court finds that questions of material fact remain with respect to Jacobs' and the Decedent's intent when making the Settlement Agreement and the Decedent's intent in continuing to pay insurance premiums without changing the beneficiary.

More importantly, the Court is concerned that Brandon Wood's position is not adequately represented before the Court. Because Brandon is still a minor, Jacobs brought this action on his behalf, as well as in her individual capacity. However, where the Proceeds must be awarded to either Brandon or to Jacobs, the potential conflict renders Brandon unrepresented. Consequently, the Court finds it necessary to appoint a guardian ad litem.[3] The Court instructs Jacobs to submit at least two names of potential guardians, together with their qualifications and fee structure, within ten (10) days of the date of this Order.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Kristine Lee Jacobs' Motion for Summary Judgment is DENIED without prejudice. Defendant Jacobs shall submit to the Court the names of at least two potential guardians ad litem to represent Brandon Wood, together with their qualifications and fee structure, within ten (10) days of the date of this Order.

DATED THIS 25th day of June, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[3] Jacobs acknowledges this possible conflict and need for a guardian in footnote 12 of her Motion. [See Dkt. #33 at 3, n. 12.]